IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN SCOTT, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 16-1149 |
| OFFICER WILLIAM CASEY, <u>et al.</u>, | |
| Defendants. | |

**Goldberg, J.**                                             February 12, 2018

## MEMORANDUM OPINION

This case involves the alleged use of excessive force on pro se Plaintiff, Darren Scott. Plaintiff alleges that Defendant, Officer William Casey, applied excessive force through the use of a taser gun on him. Defendant has filed a Motion for Summary Judgment, asking that I dismiss all claims against him, to which Plaintiff has not responded. For the reasons that follow, Defendant's Motion for will be granted.

### I.    **FACTUAL AND PROCEDURAL HISTORY**[1]

On March 12, 2014, Plaintiff went to a sandwich shop in Chester County to purchase hoagies. While in the store, Plaintiff suffered a medical episode that he says was a seizure. Paramedics Ramona Bucolo and Susan Boran responded to the scene and found Plaintiff on the floor "semi-responsive, not alert and [not] oriented." Initially Plaintiff resisted being moved into the ambulance, but eventually consented when the paramedics explained that they needed to

---

[1] The following facts are undisputed and taken from Defendant's Statement of Undisputed Material Facts, which cites to the record.

1

check him out. (Def.'s Statement of Material Facts ("Def.'s SOF") ¶¶ 3, 5-6; Compl. ¶¶ 8-9; Def.'s Mot., Ex. D at 27-28.)

Plaintiff became combative once inside of the ambulance, ripping off his blood pressure cuff, throwing it at the paramedic trainee inside, and becoming loud and agitated. Ms. Bucolo radioed for police assistance because "[y]ou could see that he was escalating." Defendant responded to Ms. Bucolo's call, and while waiting for him to arrive, Ms. Bucolo was able to calm Plaintiff down and begin checking his vital signs. When Defendant arrived, Ms. Bucolo asked him to escort Plaintiff's friend, who was standing outside of the ambulance, away from the door. Defendant did so and then approached the ambulance. When Defendant stepped into the ambulance, Plaintiff became agitated and "lost control." Plaintiff, who was on the stretcher in front of Ms. Bucolo and next to cabinets full of medical supplies, unfastened his seat belt and knocked supplies out of the cabinets. Plaintiff was "extremely irate [and] flailing." After Plaintiff calmed down a bit, Defendant left the ambulance to again escort Plaintiff's friend, who had returned, away from the ambulance door. When Defendant came back to the ambulance, he observed Plaintiff kick Ms. Bucolo in her chest, knocking her into the back of the ambulance. Plaintiff no longer appeared disoriented when he kicked Ms. Bucolo. (Def.'s SOF ¶¶ 7-10, 17; Def.'s Mot., Ex. D at 35-40; Id., Ex. E at 24-25, 27-28; Id., Ex. F at 42-43.)

Upon seeing Plaintiff kick Ms. Bucolo, Defendant re-entered the ambulance and attempted to seize Plaintiff, however, Plaintiff grabbed Defendant by the throat with his right hand and a struggle ensued. Plaintiff, who is between six feet two inches and six feet three inches tall, was "pretty much on top of" Defendant, who is five feet five inches tall. Defendant could not get Plaintiff to calm down, so he deployed his taser, which initially was ineffective because only one of the two projected prongs entered Plaintiff's body and completed a circuit.

2

Plaintiff continued to flail and strike things in the ambulance, and again tried to attack Defendant. Defendant then put the taser on Plaintiff's body and "pulled for a drive stun which is a five second circuit." This second attempt at using the taser was also ineffective because Plaintiff pulled away. Defendant applied the taser for a third time. Plaintiff then ceased resisting, and Defendant did not deploy the taser again. Once subdued, Plaintiff was transported to the hospital. (Def.'s SOF ¶¶ 12-16; Def.'s Mot., Ex. F at 42-44, 81-83, 98-100; Id., Ex. D at 49-52, 56.)

Plaintiff does not remember what occurred after he had the seizure in the sandwich store. After falling to the ground, he next remembers being tased. After that, he next recalls waking up in a hospital bed. (Def.'s SOF ¶ 4; Def.'s Mot., Ex. C at 81, 86.)

Plaintiff later pled guilty to aggravated assault on Ms. Bucolo. (Def.'s SOF ¶ 19; Def.'s Mot., Ex. G.)

Plaintiff filed his Complaint on March 11, 2016, raising a claim for excessive force against Defendant, as well as state law claims for assault and battery. Plaintiff also brought claims for municipal liability under 42 U.S.C. § 1983 against the City of Chester and intentional infliction of emotional distress against Defendant. The parties later entered a stipulation dismissing the claim against the City of Chester, as well as the claim for intentional infliction of emotional distress against Defendant. The remaining claims are those for excessive force (Count I), and assault and battery (Count III) against Defendant. As noted above, Defendant has moved for summary judgment on both claims. Although I issued Orders on October 18, 2017 and

November 8, 2017 directing Plaintiff to file a response to the Motion for Summary Judgment or risk having it treated as unopposed, he has failed to respond.[2]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] Plaintiff was originally represented by counsel in this case. Following a hearing on June 7, 2017 at which counsel detailed a fissure in the attorney-client relationship, I allowed counsel to withdraw. (Doc. No. 27.) Plaintiff is now proceeding pro se.

Although Plaintiff has failed to file a response to the Motion for Summary Judgment, Federal Rule of Civil Procedure 56(e) permits me to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."

While I have an obligation to construe a complaint liberally when filed by a pro se plaintiff, a pro se plaintiff is not relieved of the obligation to set forth facts sufficient to overcome summary judgment. Despite Plaintiff's failure to respond, I have carefully reviewed Defendant's Motion.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

### III. ANALYSIS

#### a. Count I: Excessive Force

Defendant asserts that summary judgment should be granted on this claim because his use of the taser was objectively reasonable as a matter of law. A plaintiff may bring a civil action under 42 U.S.C. § 1983 against an official who violates his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or territory . . . causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law . . . .

Section 1983 excessive force claims against police officers are "analyzed under the Fourth Amendment and its reasonableness standard." Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see also United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997).

This standard considers whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. This determination is based upon the totality of the circumstances, including: "(1) whether the suspect posed an immediate threat to the safety of the officer or others; (2) whether the suspect was actively resisting arrest; and (3) the severity of the crime at issue." Suber v. Peterson, WL 1875542, at *3 (E.D. Pa. Aug. 4, 2005) (citing Graham, 490 U.S. at 396). "In considering whether a seizure was reasonable, the Court must judge from the perspective of a reasonable officer on the scene, rather than with the perfect vision of hindsight." Id.

Turning to the uncontested facts of this case, Defendant possessed the following knowledge before deploying his taser for the first time: he had been informed by Ms. Bucolo's radio call that police assistance was needed; upon arriving, Defendant witnessed Plaintiff angrily knocking supplies out of the shelves in the ambulance and unstrapping himself from the stretcher; Plaintiff kicked Ms. Bucolo in the chest such that she fell to the back of the ambulance; Plaintiff, a much larger man than Defendant, grabbed Defendant by the throat; and Plaintiff refused to calm down. Plaintiff continued to resist and flail, thus Defendant deployed his taser twice more.

These undisputed facts establish that Plaintiff posed a severe threat to the safety of Defendant and Ms. Bucolo. Plaintiff was physically unhinged, resisted all attempts to calm down, and had just assaulted both Defendant and Ms. Bucolo. The amount of force applied by Defendant was proportional to the threat he perceived, and thus reasonable in light of the totality of the circumstances. No reasonable jury could find that Plaintiff did not present a credible threat to Defendant and others. See Patrick v. Moorman, 536 F. App'x 255, 259 (3d Cir. 2013)

(finding use of a taser against a fleeing alleged bank robber reasonable and in line with the controlling policy of the police department); Brown v. Crynar, 484 F. App'x 676, 681 (3d Cir. 2012) (finding it was reasonable for an officer to deploy a taser where he was dispatched for assistance, arrived and witnessed the plaintiff scuffling with another officer, was informed plaintiff had been tased already and continued to resist, and witnessed plaintiff lying on the ground and refusing to release his hands).

Defendant asks that I also find qualified immunity attaches, thus shielding him from liability. A court must engage in a two-part inquiry to determine if qualified immunity applies to official actions: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly' established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "An officer is entitled to qualified immunity if he meets at least one of [the] two prong inquiry." Patrick, 536 F. App'x at 259-60. Because I conclude that Plaintiff's constitutional rights were not violated, I need not reach the second prong. Defendant's actions were reasonable and therefore satisfy the first prong, thus he is entitled to qualified immunity.

### b. Count III: Assault and Battery

Defendant contends he is immune from suit on the assault and battery claim based on Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. §§ 8541 *et seq*. and 8545 *et seq*. Under Pennsylvania law "[a]ssault is an intentional attempt by force to do injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). The Supreme Court of Pennsylvania has

7

said that "[a] police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty." Id. "A police officer may be held liable for assault and battery when [the factfinder] determines that the force used in making an arrest is unnecessary or excessive." Id. Thus, "[t]he appropriate standard for determining an officer's potential liability for assault and battery when making an arrest is whether excessive or unreasonable force was used in effectuating that arrest." Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 366 (E.D. Pa. 2006).

Here, because I have concluded Defendant did not use excessive force, there can be no claim of liability for assault and battery. I thus need not determine whether Defendant is immune under the PSTCA.

## IV. CONCLUSION

Plaintiff has failed to respond to the pending Motion for Summary Judgment and has thus failed to point to any evidence creating a genuine issue of material fact. The record before me establishes that no reasonable jury could conclude that Defendant used excessive force on Plaintiff, and thus also did not commit assault and battery. Summary judgment is appropriate with respect to all claims.

An appropriate Order follows.